IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| REMERKIA THOMAS,<br>       Plaintiff,<br>    v.<br>EQUIFAX INFORMATION SERVICES, LLC, *et al.*,<br>       Defendants. | :<br><br>:<br><br>:<br><br>: Case No. 3:19-cv-286<br><br>JUDGE WALTER H. RICE |

DECISION AND ENTRY SUSTAINING DEFENDANT TRANS UNION LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (DOC. #19); DISMISSING COUNTS FIVE AND SIX OF COMPLAINT WITH PREJUDICE

---

Plaintiff Remerkia Thomas filed suit against Trans Union, LLC ("Trans Union"), Equifax Information Services, LLC ("Equifax"), and Safco, LLC ("Safco"), alleging negligent and willful violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. She has since resolved all claims against Equifax. Her two claims against Safco remain pending, as do her two claims against Trans Union.

This matter is currently before the Court on Defendant Trans Union's Motion to Dismiss, Doc. #19. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Trans Union seeks dismissal of Counts 5 and 6, the claims asserted against Trans Union for negligent and willful violations of the FCRA.

I. **Background and Procedural History**

On October 18, 2011, Thomas obtained a 48-month auto loan from Safco. Her monthly payment was $351.00. She paid off the loan, and the account was closed on June 1, 2016. On February 11, 2019, Thomas obtained a copy of her Trans Union credit disclosure report ("credit report"). According to the Complaint, although her loan was completely paid off, the credit report still reflected a Safco trade line[1] ("Trade Line") with a monthly payment of $351.00.

On or about April 25, 2019, Thomas submitted a letter to Trans Union disputing this Trade Line. She noted that the loan was fully paid, that she had a $0.00 balance, and that she no longer had any obligation to make a monthly payment to Safco. She requested that Trans Union report the Trade Line with a monthly payment of $0.00. Trans Union forwarded Thomas's request to Safco. Safco verified to Tran Union that the Trade Line was accurate as reported.

Thomas alleges that, as of June 5, 2019, she had not yet received Trans Union's investigation results ("Investigation Results"). She requested a second credit disclosure report, which showed that her requested changes had not been made.

On September 9, 2019, Thomas filed suit against Equifax, Trans Union, and Safco, alleging violations of the FCRA. Counts 5 and 6 of the Complaint assert

---

[1] "A credit report tradeline is an industry term to describe a record of activity for any type of credit extended to a borrower and reported to a credit reporting agency." *Bevly v. Equifax Info. Servs., LLC*, No. 4:18-CV-01484, 2019 WL 1434722 at *2 n.2 (E.D. Mo. April 1, 2019).

2

claims of negligent and willful violation of the FCRA against Trans Union. Thomas maintains that Trans Union violated the FCRA by: (1) preparing, compiling, issuing, assembling, transferring, publishing, and otherwise reproducing consumer reports containing information about her that was "false, misleading, and inaccurate"; (2) failing to maintain or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties, in violation of 15 U.S.C. § 1681e(b); and (3) failing to conduct a reasonable reinvestigation as required by 15 U.S.C. § 1681i. Doc. #1, PageID##7-8.

Trans Union has filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), Doc. #19. Trans Union maintains that, because the credit report accurately reflects the Trade Line as closed with a $0.00 balance and the historical payment terms as "$351.00 per month," Thomas has failed to state a claim upon which relief may be granted.

## II.  Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be

3

granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by factual allegations that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Id.* at 679.

4

**III.	Analysis**

There are two issues before the Court. First, the Court must determine whether the Investigation Results, which were attached as an exhibit to Trans Union's Motion to Dismiss, Doc. #19-1, may be considered in rendering its decision.  Second, the Court must determine whether Thomas has stated a plausible claim that Trans Union committed a negligent and/or willful violation of the FCRA.

**A.	Consideration of the Investigation Results**

As a general rule, matters outside of the pleadings are not to be considered in ruling on a motion to dismiss. If matters outside of the pleadings are submitted and are not excluded by the court, the motion must be treated as one for summary judgment, and all parties must be given a reasonable opportunity to respond and present materials pertinent to the motion. Fed. R. Civ. P. 12(d).

There are, however, exceptions to this rule.  Documents attached to the pleadings may be considered under Fed. R. Civ. P. 10(c).  *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007).[2]  The court may also consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Although a plaintiff is not required to attach to his complaint documents upon

---

[2]  Rule 10(c) states that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

5

which her claim is based, a defendant may introduce pertinent documents if the plaintiff fails to do so. *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.*

Given that Trans Union's Investigation Results are referred to, directly and indirectly, in the Complaint, and they are central to Thomas's claims, the Court may consider them in ruling on the motion to dismiss without converting it into a motion for summary judgment.

The Complaint specifically alleges that, on June 5, 2019, because Thomas had not yet received Trans Union's Investigation Results, she asked for another copy of her Trans Union credit disclosure report. Doc. #1, PageID#3. The Complaint also make indirect references to the Investigation Results, alleging that Trans Union "failed to conduct a reasonable reinvestigation." *Id.* at PageID##7-8.

Moreover, the Investigation Results are integral to Thomas's claims. As discussed in the next section of this Decision and Entry, in order to succeed on any of her FCRA claims, Thomas must show an inaccuracy in the credit report. Thomas, however, failed to attach copies of the allegedly erroneous credit reports on which her claims are based.

To fill that gap, Trans Union has submitted the Investigation Results showing how the Safco Trade Line appears on Thomas's credit report following

6

the investigation.³  Trans Union argues that the Safco Trade Line is completely accurate.  It shows that Thomas's installment account was opened on October 18, 2011, and closed on June 1, 2016, that the terms were "$351 per month, paid [m]onthly for 48 months" and that the balance is $0.  Doc. #19-1, PageID#95.

In her Response to the Motion to Dismiss, Doc. #21, Thomas repeatedly argues that, at the time of the dispute, Trans Union's reporting of a "scheduled" monthly payment of $351.00 was false, misleading, or inaccurate.  However, as Trans Union correctly points out, the term "scheduled" does not appear anywhere within the Investigation Results.  The Court agrees with Trans Union that Thomas cannot evade a Rule 12 challenge by failing to attach pertinent documents to the Complaint and then misquoting those documents in her Response.  Accordingly, the Court will consider the Investigation Results in rendering a decision on the Motion to Dismiss.

### B. Fair Credit Reporting Act Violations

The Court now turns to the question of whether Thomas has stated a plausible claim under the FCRA.  The FCRA requires that, whenever a consumer reporting agency prepares a report, it must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual

---

³  Given that Thomas did not request the two credit reports directly from Trans Union, Trans Union does not have copies of those reports in its files. As Trans Union notes, however, Thomas does not deny that the Trade Line, as it appeared in the Investigation Results is in any way inconsistent with the way it appeared in her two credit reports.  Nor does Thomas dispute the authenticity of the Investigation Results.

about whom the report relates." 15 U.S.C. § 1681e(b). If the accuracy of any information contained in a consumer's file at a consumer reporting agency is disputed by the consumer, and the consumer notifies the agency directly, the agency, within 30 days, must conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate. 15 U.S.C. §1681i(a)(1)(A).

Thomas alleges that Trans Union negligently and willfully violated both of these provisions of the FCRA.

### 1. **Claim Under 15 U.S.C. § 1681e(b)**

To state a claim under 15 U.S.C. § 1681e(b), a plaintiff must show the following: "(1) the defendant reported inaccurate information about the plaintiff; (2) the defendant either negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about the plaintiff; (3) the plaintiff was injured; and (4) the defendant's conduct was the proximate cause of the plaintiff's injury." *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938 (6th Cir. 2020) (quoting *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 844 (6th Cir. 2004)).

The first element of this claim is the subject of Trans Union's Motion to Dismiss. In two unpublished cases, the Sixth Circuit previously held that "inaccurate information" means information that is "technically inaccurate." Under this standard, information that is technically accurate, though perhaps misleading or incomplete in some respect, is not "inaccurate" within the meaning of

8

§ 1681e(b). *Dickens v. Trans Union Corp.*, 18 F. App'x 315, 318 (6th Cir. 2001). *See also Turner v. Experian Info. Sols., Inc.* No. 17-3795, 2018 WL 3648282, at *3 (6th Cir. Mar. 1, 2018) (citing *Dickens*).

Recently, however, the Sixth Circuit issued a published decision in *Twumasi-Ankrah*, 954 F.3d 938 (6th Cir. April 2, 2020), overruling the "technically accurate" standard set forth in *Dickens* and *Turner*. It held that "to state the first element of a claim under § 1681e(b), a plaintiff may allege that a [credit reporting agency] reported either 'patently incorrect' information about them *or* information that was 'misleading in such a way and to such an extent that it [could have been] expected to have an adverse effect [on the consumer].'" *Id.* at 942 (quoting *Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)). This ruling brought the Sixth Circuit in line with other circuit courts that have addressed this issue. *Id.*

Accordingly, the Court must determine whether Thomas has stated a plausible claim that the information reported by Trans Union was either "patently incorrect" or "materially misleading."

### a. Patently Incorrect?

As previously noted, the Investigation Results (which mirror the credit reports at issue), show that Thomas's installment loan account with Safco was opened on October 18, 2011, and closed on June 1, 2016, that the terms were "$351 per month, paid [m]onthly for 48 months" and that the balance is $0. Doc. #19-1, PageID#95.

9

Thomas does not dispute that the terms of the account, as reported by Trans Union, are historically accurate. Rather, she argues that this Trade Line is patently incorrect because, *at the time of the dispute*, she no longer had a "scheduled" monthly payment obligation to Safco.

Thomas cites to several decisions involving motions to dismiss FCRA claims. In *Lovelace v. Equifax Information Services, LLC*, No. 18-cv-04080, 2019 WL 2410800, at *4 (D. Ariz. June 7, 2019), the court held that "a credit report showing a 'scheduled monthly payment' of more than $0 for an account that is closed is inaccurate on its face." *See also Ellis v. Equifax Info. Servs., LLC*, No. 1:18-cv-5158, 2019 WL 3503538, at *4 (N.D. Ga. June 6, 2019) ("It is internally inconsistent for someone to have a present, ongoing, scheduled monthly payment on an account with a zero balance."); *Chavarria v. Equifax Info. Solutions, LLC*, No. cv-19-02664, (D. Ariz. Oct. 23, 2019) (an unpublished case attached as an exhibit to Plaintiff's Response to the Motion to Dismiss, Doc. #21-1, PageID#119). In each of these cases, the court concluded that the plaintiff had sufficiently alleged that the credit report, showing a scheduled monthly payment on an account with a zero balance, was either inaccurate or misleading.

Nonetheless, in so holding, the courts looked only to the allegations in the Complaint; none considered the plaintiffs' credit reports. *See Chavarria*, Doc. #21-1, PageID#116 (refusing to consider the credit reports, because they were not referred to in the Complaint); *Ellis*, 2019 WL 3503538, at *3 (noting that, if either party had attached the credit reports, the court would have been permitted to

10

consider them); *Lovelace*, 2019 WL 2410800, at *2 (refusing to consider a screenshot of the credit report because it was not properly before the court). The courts had to accept the plaintiff's allegations—that the reports showed a "scheduled" monthly payment—as true. Each court, however, acknowledged that its results may have been different had the credit reports been considered. *See Lovelace*, 2019 WL 2410800, at *2 (if the screenshot of the credit report "were properly before the court, TransUnion's dismissal arguments would have some force"); *Chavarria*, Doc. #21-1, PageID#118; *Ellis*, 2019 WL 3503538, at *3-4.

Thomas's case is clearly distinguishable because the Court may consider the content of Trans Union's Investigation Results showing how the Safco Trade Line was, in fact, reported. Nowhere in the Trade Line does it state that Thomas has a "scheduled" monthly payment in any amount. Because this exhibit is inconsistent with Thomas's allegation that the credit reports contained patently incorrect information, the Court need not accept her allegation as true. *See Mengel Co. v. Nashville Paper Prods. & Specialty Workers Union*, 221 F.2d 644, 647 (6th Cir. 1955) (holding that, if the pertinent documents are "inconsistent with the allegations of the complaint, the exhibit controls."). The Court concludes that Thomas has failed to state a plausible claim that the information contained in the credit reports was patently inaccurate.

Thomas also argues that Trans Union was at least negligent in its reporting because it did not comply with the Credit Reporting Resource Guide ("CRRG"), portions of which are attached to her Response to the Motion to Dismiss. With

11

respect to the "Scheduled Monthly Payment Amount," the CRRG instructs consumer reporting agencies to report the dollar amount of the scheduled monthly payment due for that reporting period and, when the account is paid in full, the amount "should be zero filled." Doc. #21-2, PageID##131-132.

In ruling on the Motion to Dismiss, however, the Court cannot consider this document, which is a matter outside the pleadings. The CRRG excerpts were not attached as an exhibit to the Complaint. Moreover, even if they had been attached, they do not necessarily constitute "written instruments" such that, under Fed. R. Civ. P. 10(c), they would be considered part of the pleading. *See* 2 James Wm. Moore, *Moore's Federal Practice* §10.05[2] (3d ed.) ("The traditional understanding of 'instrument' is a document that defines a party's rights, obligations, entitlements, or liabilities, such as a contract.").

Even if the Court were to consider the CRRG, it would not salvage Thomas's claim, because Trans Union's alleged failure to abide by the requirements of the CRRG is insufficient to establish a violation of the FCRA. *See, e.g.*, *Gibson v. Equifax Info. Servs., LLC*, No. 5:18-CV-00465, 2019 WL 4731957, at *3 (M.D. Ga. July 2, 2019) ("Failure to comply with the CRRG does not create a federal claim where one does not already exist."); *Cowley v. Equifax Info. Servs., LLC,* No. 2:18-cv-02846, 2019 WL 5310205, at *2 (W.D. Tenn. Oct. 21, 2019) (holding that the CRRG "does not control the outcome of this Court's accuracy finding" because "[t]he FCRA does not mandate perfect compliance with the [CRRG]—it prohibits false and misleading credit reports.").

The Court finds that Thomas has failed to state a plausible claim that Trans Union's Trade Line, which accurately states the historical terms of Thomas's auto loan from Safco, is patently incorrect.

### b. Materially Misleading?

The next question is whether Thomas has stated a plausible claim that the Trade Line is materially misleading, *i.e.,* "misleading in such a way and to such an extent that it [could have been] expected to have an adverse effect [on the consumer]." *Twumasi-Ankrah*, 954 F.3d at 942.

Thomas does not allege that anyone was materially misled by the Safco Trade Line as reported by Trans Union. Given that the Trade Line accurately reports the historical payment terms and depicts the account as closed with a zero-dollar balance, the Court agrees with Trans Union that no reasonable person would be misled into believing that Thomas has any ongoing monthly obligation on this installment loan. *See Jones v. Equifax Info. Servs., LLC*, No. 2:18-cv-2814, 2019 WL 5872516, at *4 (W.D. Tenn. Aug. 8, 2019) (holding that, even under the "materially misleading" standard, plaintiff's claims would still fail as a matter of law because "a reasonable prospective lender would understand [that] the report showed a past obligation only"). The Court concludes that Thomas's allegations are insufficient to support a plausible claim that Trans Union's credit reports are materially misleading.

13

For these reasons, the Court finds that Thomas has failed to state a plausible claim under § 1681e(b). Accordingly, Trans Union is entitled to dismissal of the § 1681e(b) claims.

### 2. Claim Under 15 U.S.C. § 1681i

Thomas also alleges that Trans Union is liable under 15 U.S.C. § 1681i for failing to conduct a reasonable reinvestigation into her disputed claim. Again, Thomas has failed to state a plausible claim for relief.

The Complaint alleges that, upon receiving notice of Thomas's dispute concerning the allegedly erroneous Trade Line, Trans Union forwarded the dispute to Safco, and Safco verified that Trans Union's reporting of the Trade Line was accurate. The Investigation Results appear to have been issued on May 8, 2019, Doc. #19-1, PageID#95, within the 30 days allotted by statute. Notably, Thomas does not allege that she never received the Investigation Results. She alleges only that she had not received them as of June 5, 2019.

More importantly, given that Thomas failed to establish that the credit reports were patently incorrect or materially misleading, the Court need not address the question of the "reasonableness" of the reinvestigation. *See Deandrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008) ("the weight of authority . . . indicates that without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail."). Accordingly, the Court concludes that Thomas has also failed to state a claim under § 1681i upon which relief may be granted.

### 3. Summary

For the reasons stated above, the Court finds that Thomas has failed to state a plausible claim under either § 1681e(b) or § 1681i. The Court therefore SUSTAINS Trans Union's Motion to Dismiss Counts 5 and 6 of the Complaint, Doc. #19.

When a plaintiff fails to state a plausible claim for relief, the court often grants leave to amend the pleading. *See* Fed. R. Civ. P. 15(a) (stating that the court shall freely grant leave to amend a pleading when justice so requires). However, such leave is properly denied when amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, in order to establish any FCRA violation, Thomas must show an inaccuracy in the credit reports. No amendment to Thomas's Complaint will change the fact that the credit reports at issue contain no inaccuracies. They are neither patently incorrect nor materially misleading. Given that any amendment to the Complaint would be futile, Thomas's claims against Trans Union, as set forth in Counts 5 and 6 of the Complaint, are DISMISSED WITH PREJUDICE.

## IV. Conclusion

For the reasons stated above, the Court SUSTAINS Defendant Trans Union's Motion to Dismiss. Doc. #19. The Court concludes that Thomas has failed to state a plausible FCRA claim against Trans Union. The Court therefore DISMISSES Counts 5 and 6 of the Complaint WITH PREJUDICE pursuant to Fed. R.

Civ. P. 12(b)(6), and terminates Trans Union as a party to this litigation. Each party will bear its own costs.

Date: April 27, 2020      /s/ Walter H. Rice (tp - per Judge Rice authorization after his review)
　　　　　　　　　　　　　　WALTER H. RICE
　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE